[Civ. No. 25616.   Second Dist., Div. Three.   May 23, 1962.]

MAX BELGRADE et al., Plaintiffs and Appellants, v. NATIONAL AMERICAN INSURANCE COMPANY, Defendant and Respondent.

Paul K. Duffy for Plaintiffs and Appellants.

Bolton, Groff & Dunne and Gene E. Groff for Defendant and Respondent.

FORD, J.—As a result of vandalism, the plaintiffs suffered damages in an amount in excess of $9,000 to a residence and the carpets and drapes therein. They sought recovery for their loss from the defendant insurance company under the terms of a policy of insurance. The amount of loss was not in dispute but the defendant denied liability because of a provision of the policy as to the effect of a vacancy of the property. The trial court rendered judgment for the defendant and the plaintiffs have appealed therefrom.[1]

In the policy it was provided that, with respect to the property covered, the appellants were insured against all loss caused by vandalism and malicious mischief. However, it was further provided that there should be no liability with respect to that peril "if the described property has been vacant beyond a period of thirty (30) consecutive days immediately preceding the loss." Vacancy and unoccupancy were defined in the policy as follows: "A building intended for residence by human beings shall be deemed to be vacant within the meaning of this policy unless such building contains the furnishings ordinarily contained therein to enable the use of said building for the purpose for which it is adapted; and shall be deemed to be unoccupied (but not vacant) if such building contains the furnishings ordinarily contained therein to enable the use of said building for the

---

[1] While in the notice of appeal it is stated that the appeal is also from the denial of the plaintiffs' motion for a new trial, there is no appeal from such an order. (*Rodriguez* v. *Barnett,* 52 Cal.2d 154, 156 [338 P.2d 907].)

purpose for which it is adapted, but no lawful occupant is residing therein.''

The only testimony offered was that of Jules Belgrade, one of the plaintiffs. He and his brother, the other plaintiff, acquired the property, which was residential in nature, as the result of a foreclosure of an encumbrance thereon. The house was a large two-story structure containing about 10 rooms. The former owner moved out about June 27, 1958. Thereafter the plaintiffs were there every day prior to the vandalism which occurred on August 24, their purpose being to ''keep it available for prospective customers'' who might buy or rent it. The initial price asked for the property was $79,500. A ''For Sale'' sign was placed in front of the house. When the Belgrades took possession, there were expensive drapes and carpeting in the house. The items of personal property which they had in the house between June 29, 1958, and August 24, 1958, were described by Mr. Belgrade as follows: ''. . . [an aluminum] chaise lounge with a mattress [which was sometimes placed in the living room and sometimes taken upstairs] . . . two inner spring mattresses [which rested on the floor] used as beds . . . sheets, pillow cases and pillows . . . six blankets . . . two suits, shirts, underwear, bath towels, hand towels . . . toiletries . . . toothbrushes and dental floss and soap and everything that pertains to washing . . . breakfast room table and four chairs . . . a kitchen stool . . . a captain's chair . . . a folding chair . . . pots, pans and an electric hot plate . . . a freezer unit in the soda fountain, the built-in soda fountain [in the playroom on the second floor] . . . silverware and plates and cups and glasses and dishes [which were used several times a day].'' Additional items of property on the premises were a statue, a radio, a vacuum cleaner, dust mops, brooms, brushes and garden implements. All utilities, including telephones, were connected.

The plaintiffs would come to the premises as early as 8 o'clock in the morning and leave as late as midnight. Milk was kept in the freezer unit. Canned foodstuffs were brought in. There was no stove; the hot-plate was used for cooking. The two brothers ate ''breakfast, lunch and dinner there.'' Jules Belgrade, because of his physical condition, took daily naps in an upper bedroom. On one night in July and on three nights in August prior to the vandalism, he slept on the premises. During this period, he and his brother had another residence.

The trial court found that "from June 27, 1958 to, until and including August 24, 1958, and up to the time of the occurrence of the acts of vandalism, the dwelling ... did not contain furnishings ordinarily contained in such a building to enable the use of said building for the purpose for which it was adapted," which was for use as a place of "residence by human beings." In view of the evidence, heretofore related, of how sparsely the house was furnished, it is obvious that the record amply supports such determination of the trial court.

█ The propriety of a provision in a policy that the insurance shall not be effective with respect to a particular peril if the property is permitted to be vacant for a specified period of time has been recognized. (29A Am.Jur., Insurance, § 903; see *Foley* v. *Sonoma County etc. Ins. Co.*, 18 Cal.2d 232, 234-235 [115 P.2d 1].)[2] Such a provision has a reasonable purpose with respect to the peril of vandalism and malicious mischief since it serves to guard against a substantial increase of the risk. (See *Mauck* v. *Northwestern National Ins. Co.*, 102 Cal.App. 510, 514 [283 P. 338].)

█ The policy in the present case clearly provided that it should not cover the peril of vandalism and malicious mischief under the factual situation herein disclosed. █ As stated in *New York Life Ins. Co.* v. *Hollender*, 38 Cal.2d 73 [237 P.2d 510], at page 81: "While it is settled law that in case of doubt the provisions of the insurance contract will be construed most strongly against the insurer [citations], the rule is equally well established that where the terms of the policy are plain and explicit, the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed [citations]." (See also *Jensen* v. *Traders & General Ins. Co.*, 52 Cal.2d 786, 790-791 [345 P.2d 1]; *S & M Lamp Co.* v. *Lumbermens Mutual Casualty Co.*, 199 Cal.App.2d 446, 453 [18 Cal.Rptr. 633].)

The contention is made by the appellants that certain items were covered by the policy regardless of the vacancy of the premises. They argue that under "Item 1 No. 4" their "loss from damage to the drapes and rugs should be covered absolutely regardless of the exclusionary portion of the insurance

---

[2]It was stated in *Foley* v. *Sonoma County etc. Ins. Co.*, 18 Cal.2d 232 [115 P.2d 1], at pages 234-235: "The term 'vacant' is associated with removal of inanimate objects from a dwelling; the term 'unoccupied' is associated with the abandonment of that dwelling as a customary abode by its former occupants. (See cases collected in 43 Words and Phrases (Perm. Ed.) 344-355; 26 Corpus Juris 213; 14 R.C.L. 1103.)"

policy relative to loss from vandalism or malicious mischief." Such contention is without merit because the portion of the policy to which specific reference is made, namely, "Item 1 No. 4," was limited to a description of the items of property which were included in the coverage of the building. The determinative provisions of the policy under the facts before the court were those which set forth the "perils insured against," including that of vandalism and malicious mischief, and the various limitations and exclusions with respect to liability for losses due to designated perils. For reasons heretofore stated, there was no liability in the present case under the provisions of the policy relative to the peril of vandalism and malicious mischief.

The attempted appeal from the order denying the plaintiffs' motion for a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.