Filed 4/17/13

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA et al., <br><br>     Petitioners, <br><br>     v. <br><br> SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, <br><br>     Respondent, <br><br> MICHAEL M. BRAUM, TRUSTEE OF THE BRAUM LALEHZARZADEH LIVING TRUST, <br><br>     Real Party in Interest. | B243650 <br><br> (Los Angeles County Super. Ct. No. BC453024) |
| KORAM INSURANCE CENTER, INC., <br><br>     Petitioner, <br><br>     v. <br><br> SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, <br><br>     Respondent. | B244334 <br><br> (Los Angeles County Super. Ct. No. BC453024) |

MICHAEL M. BRAUM, TRUSTEE OF
THE BRAUM LALEHZARZADEH
LIVING TRUST,

     Real Party in Interest.

ORIGINAL PROCEEDINGS in mandate.  John L. Segal, Judge.  Granted.

Weston & McElvain, Wynn C. Kaneshiro and Robin H. Jung for Petitioners, Travelers Property Casualty Company of America and the Travelers Indemnity Company.

No appearance for Respondent.

Musick, Peeler & Garrett and Steven T. Adams for Petitioner, Koram Insurance Center, Inc.

Martin E. Jacobs, Inc. and Martin E. Jacobs for Michael M. Braum, Trustee of the Braum Lalehzarzadeh Living Trust, Real Party in Interest.

_____

A developer obtained a construction loan from a bank, and began construction on a multi-unit condominium complex. The bank required the developer to maintain builder's risk insurance (i.e., a construction policy) on the property and to identify the bank, and its successors and assigns, as loss payee. The developer, apparently, did so. Eventually, when the condominium complex was near completion, the developer fell behind in its payments on the loan. After the developer's default, the bank sold the loan to an investor, who would ultimately foreclose on the property. After the assignment to the investor, but before the foreclosure sale, the developer's construction insurance policy lapsed and the developer sought a new policy. At this point, the developer represented to its insurance broker that a homeowner's association had been created, and that most of the condominium units had been sold. Given those facts, the broker discussed the possibility of replacing the builder's risk policy with a condominium policy issued to the homeowners association. The developer agreed and obtained a condominium policy for the homeowners association, from an insurer for which the broker was an authorized agent. However, it would subsequently be revealed that no certificate of occupancy was ever issued and no units were ever occupied; any sales which may have been pending failed to close.

Shortly after the new policy issued, the property was allegedly damaged by theft and vandalism. The developer filed for bankruptcy and the investor obtained the property through foreclosure. Subsequently, the investor filed a claim against the insurer for the losses from the theft and vandalism. The insurer denied the claim, on the basis that the condominium policy excluded coverage for such losses if incurred when

3

the property was vacant. The investor brought the instant action against the insurer for breach of contract, and against the broker (and the insurer, as the broker's principal) for professional negligence.

The insurer and broker both moved for summary judgment, and their motions were denied. The insurer and broker filed petitions for writ of mandate, challenging the trial court's rulings. We conclude that the trial court should have granted both motions for summary judgment. We will therefore issue the requested writ. As to the investor's cause of action for breach of contract against the insurer, the vacancy exclusion is applicable to the claim and plainly bars coverage. As to the investor's cause of action for professional negligence, we hold that the broker owed no duty to *the investor* to provide any particular type of coverage to *the developer and the homeowners association*, its clients. If the developer breached its contract with the bank (and its assignee) by failing to maintain builder's risk insurance, the remedy of the investor, if any, is against the developer.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Initial Loan*

On September 21, 2005, Joy Investment Group (Joy) obtained a $4.5 million construction loan from East West Bank (EWB), in order to construct a 13-unit condominium project at 332 South Virgil Avenue, in Los Angeles (the property). Under the construction loan agreement, Joy covenanted to maintain "fire and other risk

4

insurance . . . as Lender[1] may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender." The insurance clause further provided, "In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require." In addition, Joy executed a separate agreement to provide insurance in connection with the loan. The agreement to provide insurance set forth several different types of insurance which Joy was required to provide. Specifically with the respect to the property, Joy agreed to provide (1) fire and extended coverage; (2) builder's all risk coverage; and (3) general liability insurance.

Construction began, and, although the record is silent on the matter, it is assumed that Joy obtained the necessary coverages. In any event, it appears that, from at least some point in 2008, Joy obtained its insurance from Koram Insurance Center, Inc. (Koram), which placed its 2008 policies with Underwriters at Lloyd's of London. Koram issued certificates of insurance indicating that EWB, its successors and/or assigns, was "named as a mortgagee" and, in some cases, as an "additional insured." The last of the Lloyd's policies was effective from October 1, 2008 through January 1, 2009.

2.     *The Loan is Assigned*

By November 2008, however, Joy was in default on the construction loan. Indeed, Joy had by then been in default for at least six months. Michael M. Braum,

---

[1]     "Lender" was defined to mean EWB, its successors and assigns.

Trustee of the Braum Lalehzarzadeh Living Trust (Braum) purchased the note from EWB.[2] Braum had inspected the property and thought it was "a winner." According to Braum, "[e]verything was finished," and the units were listed for sale. Indeed, Braum had been informed that four of the units were in escrow, although the property was vacant at the time. Braum purchased the note from EWB for $3.7 million, comprised of a $1.1 million downpayment, and an unsecured interim note to EWB. EWB assigned its deed of trust on the property to Braum. It is not clear at what point Braum commenced foreclosure.

3.    *Joy Obtains the Condominium Insurance Policy*

In December 2008, as Joy's then-existing construction insurance policy[3] was about to expire, Joy spoke with Koram regarding new insurance. It is undisputed that Jay No, a member of Joy, "informed Koram that several of the units at the [p]roperty had buyers and were in escrow and that Joy had recently created a homeowners[] association for the condominium complex [(HOA)]." It is further undisputed that No and Koram "then discussed obtaining an insurance policy for the HOA instead of the type of [v]acant building[] policy previously issued by [Lloyd's] with Joy . . . as the named insured." Finally, it is undisputed that "[a] written proposal was prepared by

---

[2]    Indeed, Braum stated that the trust was formed in order to acquire the note.

[3]    As already noted, we assume that Joy had previously purchased a builder's risk policy as required by its loan agreement with EWB. A builder's risk policy normally contains a vacancy exclusion clause, but expressly excepts out property under construction. (See e.g., *Ellmex Const. Co., Inc. v. Republic Ins. Co.* (N.J. 1985) 494 A.2d 339, 341-342.) Some property insurance policies contain a similar exception for property under construction. (See e.g., *TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 23-24.)

Koram concerning a Travelers[4] 'HOA' policy, conditioned upon 80% of the condominium units being sold.  Mr. No signed the proposal on behalf of Joy . . . /. . . HOA."  Indeed, the written proposal, signed by No, is part of the record, and it not only indicates, under "Coverage," "Subject to . . . 80% *sold*," but, under "Conditions" states, "Subject to . . . 80% *occupancy*."[5]  (Capitalization and underlining omitted, both italics added).

Braum would ultimately rely heavily on the fact that Travelers initially declined to issue the policy, due to "inadequate occupancy,"  but, upon resubmission, agreed to issue the policy once Koram confirmed to Travelers that 10 of the 13 units had been sold.[6]  However, Braum does not argue, and there is no evidence to suggest, that Koram had not been informed by Joy that 10 of the units had, in fact, been sold.

---

**4**    There are two Travelers entities involved in this case – Travelers Property Casualty Company of America, which ultimately issued the policy, and Travelers Indemnity Company, which was erroneously named on a certificate of insurance.  Both are members of Travelers Group.  Although Travelers Indemnity Company argues that it should be entitled to summary adjudication on Braum's breach of contract cause of action as it did not issue the policy, we need not address the argument as we will conclude the policy provides no coverage for the claimed loss irrespective of who issued it.  As a result, there is no need to consider the entities separately, and we will simply refer to any or all of them as "Travelers."

**5**    The individual at Travelers who ultimately approved the issuance of the policy testified that the underwriting guideline for such a policy "is that 80 percent of the units are sold or occupied,"  and that, from an underwriting point of view, "sold" and "occupied" "can reasonably be considered interchangeable."

**6**    Ten of 13 is not 80%; it is only 77%.  There is no suggestion that Travelers violated its own underwriting standards by approving the policy with only 77% of the units sold.

7

When Koram received the policy, it sent it to No. Koram never received any objections, questions, concerns or complaints about the policy from anyone at Joy.

4.    *Relevant Policy Terms*

Travelers issued the policy on January 15, 2009, although the policy period commenced on January 1, 2009. The policy was set to run through January 1, 2010. The policy was entitled "Condominium PAC Plus"; the named insured was the HOA. The policy included a businessowners coverage part, with amendatory provisions regarding condominium association coverage, and a general liability part.

The vacancy exclusion at issue in this case is part of the businessowners coverage. The policy identifies the Covered Causes of Loss as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: [¶] a. Limited in Paragraph A.5., Limitations; or [¶] b. Excluded in Paragraph B., Exclusions." The Limitations paragraph, A.5, follows immediately. The vacancy clause is the fourth limitation therein. It states, "We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss, if the building where loss or damage occurs has been 'vacant' for more than 60 consecutive days before that loss or damage occurs: [¶] (1) Vandalism; [¶] . . . [¶] (5) 'Theft'; or [¶] (6) Attempted 'theft'." "Vacant" is defined, in the "Property Definitions" section of the policy, as follows: "(1) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations. [¶] (2) When this policy is issued to the owner or general lessee of a building, building

8

means the entire building. Such building is vacant unless at least 31% of its total square footage is: [¶] (a) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; or [¶] (b) Used by the building owner to conduct customary operations."

     5.    *The Certificate of Insurance*

EWB used a company called Van Wagenen to monitor compliance with insurance requirements in its contracts. On January 14, 2009, Van Wagenen faxed a request for updated insurance information to Joy, on behalf of EWB.[7] The one-page request referenced the Lloyd's policy and stated, "A review of our records indicates that the above referenced policy specified a coverage period ending 01/01/09. If the policy has been renewed or a new policy issued, confirm the policy meets the required coverages listed below: [¶] · Fire and Extended Coverages [¶] · Listed as Mortgagee:

---

[7]    It is unclear if Van Wagenen was simply unaware that Joy's construction loan had been assigned by EWB to Braum, or if, to the contrary, it was aware of the assignment, but, nonetheless, sought to obtain Joy's updated insurance information. EWB's insurance witness testified that, as EWB no longer held a deed of trust on the property, it could no longer enforce its insurance requirements. However, it could still monitor Joy's compliance, something it would wish to do, as it had an interest in Braum paying his unsecured note. Braum offered testimony to the effect that he had been informed that EWB would continue to monitor Joy's insurance, and would immediately notify Braum if there was a lapse in coverage. While this testimony was properly excluded as hearsay, it does suggest that Van Wagenen may have sought to confirm the status of Joy's insurance even if it knew EWB had assigned the loan.

9

[EWB, its successors and/or assigns]. Please fax or mail a copy of the policy to our Insurance Service Center."[8]

Joy forwarded this request to Koram. Koram responded to the request by issuing a certificate of insurance, which it sent to Van Wagenen. The certificate is actually entitled "Certificate of Liability Insurance." It references the Travelers policy. Under "Type of Insurance," the box is checked for "Commercial General Liability."[9]

The certificate of insurance names EWB, its successors and/or assigns as "certificate holder." The certificate then states, "The certificate holder is named as mortgagee."

6.    *The Loss*

At some point in February 2009, there was a loss at the property, purportedly caused by vandalism or theft. Specifically, all of the appliances, toilets, faucets, and air conditioning returns were removed from the units. There is a dispute in the record as to whether this was actually the result of vandalism. There is evidence that No, realizing that his loss of the property through foreclosure was imminent, ordered all of these items removed and stored in a safe place.

In any event, it is undisputed that, at the time of the loss, *nobody* lived in the units at the property. Indeed, as already noted, a certificate of occupancy had not been

---

[8]    Braum argues that the Travelers policy did not comply with the coverages listed in this request. However, this request did not ask Joy to confirm that it had builder's risk coverage, or, indeed, any coverage other than "Fire and Extended Coverages."

[9]    Under "Other," someone has typed "Building" and "Extra Expense." Braum does not suggest that the word "Building" falsely represented that a builder's risk policy had been issued.

issued.  While it is unclear exactly how much work remained to be done,[10] it is undisputed that none of the units were sold or occupied at the time of the loss.

7. *Joy Loses the Property*

Effective March 15, 2009, Travelers canceled the policy, due to Joy's nonpayment of the premium.  On April 6, 2009, Joy filed a voluntary petition in bankruptcy.  At that time, it "was in the final stage of construction of the [p]roperty."  At some point, the property was lost to Braum through foreclosure.  Braum's assignee took possession of the property and began restoring it.[11]  As of February 2012, a certificate of occupancy still had not issued for the property.

8. *Braum's Insurance Claim is Denied*

On September 15, 2010, Braum submitted a claim to Travelers for the purported vandalism loss which had occurred in February 2009.  By letter dated December 20, 2010, Travelers denied the claim, on the basis that the property had been vacant for more than 60 days prior to the vandalism (and, additionally, because no theft had occurred).

---

[10] Braum's complaint states that, as of January 14, 2009, the project was "97% completed."  Yet the permit history of the project shows that a permit was issued in September 2011, which indicated the work was "85% complete."  It is unclear whether the additional 12% of work yet to be done was due to the purported vandalism.

[11] The statement to this effect is found in Braum's answers to interrogatories, which were submitted as evidence in support of Travelers's motion for summary judgment.  While the interrogatory answers have been signed by Braum's counsel, there is no verification by Braum in the copy of the interrogatory answers in the record before us.  Braum made no attempt, either in his opposition to the motion for summary judgment or in this court, to disclaim the interrogatory answers on the basis that they were unverified.

11

9.      *Proceedings Prior to the Summary Judgment Motions*

Braum then filed the instant action against Travelers and Koram.  The operative

complaint is his third amended complaint, filed April 11, 2012.  Braum alleged causes

of action against both defendants for breach of contract, professional negligence, and

fraud.  Braum did not deny that the property was vacant at the time of the vandalism;[12]

instead, he alleged that Koram and Travelers were estopped to deny coverage on the

basis that the property was unoccupied, as they had failed to determine if the property

was actually occupied prior to binding insurance.  Braum also alleged that Koram had

been aware of Joy's insurance obligations to EWB, and that Braum, as EWB's assignee,

was the intended third-party beneficiary of any contract for Koram to provide insurance

for the property.  Braum further alleged that, by issuing the certificate of insurance in

response to Van Wagenen's request, Koram and Travelers undertook an obligation to

provide insurance which met the terms of the request.

Both Travelers and Koram demurred to the third amended complaint.  The trial

court sustained without leave to amend Koram's demurrer to the breach of contract

cause of action, and both defendants' demurrers to the fraud cause of action.

10.      *Travelers' Summary Judgment Motion*

Travelers then moved for summary judgment on the breach of contract and

professional negligence causes of action remaining against it.  It argued that the breach

of contract cause of action failed because the loss occurred when the property had been

---

[12]      Indeed, his complaint repeatedly alleged that the property was "vacant" when the insurance was bound.

12

vacant for more than 60 days.[13] As to the professional negligence cause of action, which was based only on Koram's negligence (and Travelers' liability therefor as Koram's principal), Travelers argued that Koram owed no duty to Braum to provide Joy or the HOA with different coverage than that which had been requested by Joy.

In opposition to the motion, Braum argued that there was no competent evidence that the property had been vacant for 60 days prior to the vandalism and that, at any rate, the exclusion was unenforceable as it was not conspicuous, plain and clear.[14] Braum also argued that Koram was negligent in a variety of ways, including: (1) failing to inspect the sales and occupancy of the condominium units; (2) misstating facts regarding sales and occupancy to Travelers; (3) failing to advise the HOA and EWB that the policy contained a provision regarding occupancy, even though it knew EWB

---

[13] Travelers also argued that Braum had not been properly added to the policy by being identified as "mortgagee" in the certificate of insurance, without the issuance of a specific endorsement to that effect. We need not reach the issue. We do note, however, that the parties discuss the issue as one of estoppel; that is, whether Travelers is estopped to deny that Braum is mortgagee, due to the issuance of the certificate of insurance. We disagree; the facts only raise an issue of equitable estoppel if it is a case of *ostensible* agency. (*Preis v. American Indemnity Co.* (1990) 220 Cal.App.3d 752, 761.) In this case, there does not appear to be a dispute that Koram was permitted to issue certificates of insurance to mortgagees on behalf of Travelers. Thus, this case would appear to raise issues of *actual* agency, rather than *ostensible* agency, and would therefore not implicate principles of equitable estoppel. In any event, we need not reach the issue, and assume for the purposes of this writ proceeding that Braum was properly named as "mortgagee" in the policy. To the extent Braum argues that he was named as an "insured" or "mortgagee insured," we disagree. The certificate of insurance named Braum only as a "mortgagee," not an insured. The policy provides certain rights to named mortgagees. These are rights as a loss payee, not an insured.

[14] Braum argued, "In this case the limitation was not conspicuous and it detracted from the coverage that *the lender could reasonably expect from construction loan insurance*." (Italics added.) Braum did not argue that it detracted from coverage that an HOA could reasonably expect from a Condominium PAC policy.

13

had a construction loan; and (4) failing to advise EWB, in the certificate of insurance, of the limitation on vandalism coverage.

The trial court denied Travelers's motion. As to the vandalism limitation, the court concluded that the limitation could not apply, as it required the property to be vacant for 60 days prior to the vandalism, and 60 days could not have run between the date of policy *issuance* (January 2009) and the vandalism (February 2009). As the court explained at the hearing, any other interpretation would mean that the vandalism coverage was illusory the moment the policy was issued. As to the cause of action for professional negligence, the court concluded that Travelers could be liable for Koram's negligence, and that Koram's duty, as an insurance broker, ran not only to its client, the named insured, but also to the class of potential victims of the insured, which included EWB and Braum as loss payees. Concluding that Travelers had failed to defeat this theory of liablity, under the authority of *Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437 (*Nowlon*), the court concluded that Travelers did not meet its burden on summary judgment.

11. *Koram's Summary Judgment Motion*

Koram moved for summary judgment shortly after Travelers; there was overlapping briefing. The sole cause of action remaining against Koram after the demurrer was professional negligence. Koram argued that it was entitled to summary judgment because it owed Braum no duty, Braum was not injured by its actions, and Braum was not a member of the class of potential victims to which it owed a duty of care. Unlike Travelers, Koram's motion specifically addressed *Nowlon*, and argued that

14

it was a negligence per se case, which could not apply here, as Braum had alleged no statutory violation.

In opposition, Braum argued that *Nowlon* applied because, although he did not allege a specific statutory violation,[15] insurance is a highly regulated industry. In any event, Braum argued that Koram had been negligent in obtaining a policy with a vandalism exclusion based on *occupancy*, given that No, on behalf of Joy, had stated only that several units had been *sold*. He also again argued that Koram was negligent in failing to investigate, and in failing to issue a certificate of insurance which reflected the coverages in the policy.

The trial court[16] denied Koram's motion, stating, "The court cannot find that Koram did not owe a duty to EWB as a matter of law. Koram has not carried its burden of showing that *Nowlon* cannot apply to infer standing on Braum to sue Koram for negligence."

12. *The Writ Petitions*

Travelers filed a timely motion for writ of mandate. (Code Civ. Proc., § 437c, subd. (m)(1).) We issued an order to show cause, staying the trial pending further order

---

[15] Braum did assert that violations of Insurance Code section 790.03 had been implicit in his complaint. He does not pursue this argument in the instant writ proceeding.

[16] The trial court judge hearing Koram's summary judgment motion was a different judge from the one who had ruled on Travelers's motion.

of this court. Thereafter, Koram filed a petition for writ of mandate. We consolidated the two writ proceedings and issued a second order to show cause.[17]

## *ISSUES BEFORE THE COURT*

First, we consider the issue of whether the policy provided coverage for the purported vandalism loss. We conclude that the vacancy limitation indisputably applies, and that there is no coverage. Next, we consider the issue of the alleged professional negligence of Koram. We conclude that Koram's only duties ran to its clients, Joy and the HOA, and not to Braum. We further held that *Nowlon, supra,* 1 Cal.App.4th 1437, is limited to the unique circumstances of negligence per se, and that its reasoning cannot be extended to allegations of negligence without a statutory basis. As a result, Braum cannot recover against Koram or Travelers for Koram's alleged professional negligence.

---

[17] Koram impliedly concedes that its petition was not timely under the requirements of Code of Civil Procedure section 437c, subdivision (m)(1), but nonetheless argues that we should consider the petition, given that we had already issued an order to show cause regarding Travelers's writ petition. We agree that Koram's writ petition is untimely and the requirements of Code of Civil Procedure section 437c, subdivision (m)(1) are jurisdictional. (*Bensimon v. Superior Court* (2003) 113 Cal.App.4th 1257.) However, the issue raised by Koram's writ petition is inextricably intertwined with an issue already before us in the Travelers writ petition. As we will conclude that summary judgment should have been granted to Travelers in part on the basis that Braum has no cause of action for professional negligence against Koram, no interests of justice can be served by dismissing Koram's writ petition as untimely and requiring a trial on a cause of action which we have already concluded has no legal basis.

16

## DISCUSSION

1. *Standard of Review*

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.)  The pleadings define the issues to be considered on a motion for summary judgment.  (*Sadlier v. Superior Court* (1986) 184 Cal.App.3d 1050, 1055.)  As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense.  Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact.  (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065.)" (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  We review orders granting or denying a summary judgment motion de novo.  (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579.)  We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

17

2.      *The Vacancy Limitation Applies*

Braum argues that the alleged vandalism loss was covered under the terms of the Travelers policy. Travelers moved for summary judgment on the basis of the vacancy limitation. This raises an issue of policy interpretation.

" '[I]nterpretation of an insurance policy is a question of law.' [Citation.] 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' [Citation.] Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language 'is clear and explicit, it governs.' " (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115.)

"In the insurance context, 'we begin with the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again, "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." ' " (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204.) "[T]o be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.' [Citation.] Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson. [Citations.] The burden of making coverage

exceptions and limitations conspicuous, plain and clear rests with the insurer." (*Id*. at p. 1204.)

The rule that exclusionary language must be conspicuous, plain and clear applies only when the insured has a reasonable expectation of coverage. (*Haynes v. Farmers Ins. Exchange, supra,* 32 Cal.4th at p. 1213.) Once an insured has a reasonable expectation of coverage, the court then must consider whether the limitation on that coverage is conspicuous. The issue is whether the entire policy adequately directs the reader to the terms of the relevant exclusionary language. (*Id*. at p. 1210.) Once the provision has been determined to be conspicuous, the provision must also be plain and clear in order to be given effect. " ' "This means more than the traditional requirement that contract terms be 'unambiguous.' Precision is not enough. Understandability is also required." ' " (*Id*. at p. 1211.)

Preliminarily, we harbor serious doubts as to whether the insured HOA, which had applied for coverage conditioned upon 80% occupancy, had a reasonable expectation of coverage for vandalism when the property was vacant. However, as the parties did not proceed on this basis, we assume a reasonable expectation of coverage and turn to whether the limitation is conspicuous, plain and clear.

We repeat the relevant language. The limitation clearly states, among other policy limitations: "We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss, if the building where loss or damage occurs has been 'vacant' for more than 60 consecutive days before that loss or damage occurs: [¶] (1) Vandalism; [¶]… [¶] (5) 'Theft'; or [¶] (6) Attempted 'theft'."

Assuming, for the moment, that the property was, in fact, vacant, the limitation on coverage clearly applies. The language is conspicuous, appearing in the list of policy limitations, immediately following the grant of coverage. It is also plain and clear: if the property has been vacant "for more than 60 consecutive days before" the vandalism or theft, there is no coverage for the vandalism or theft.

In this case, the trial court relied on an interpretation of the language to which it is not reasonably susceptible. The court concluded that the period "for more than 60 consecutive days before" the vandalism must, in fact, commence at or after policy issuance. There is no limitation in the clause which so states, nor is there any language in the clause which permits such an interpretation. Some courts have found that a vacancy period must commence at or after policy issuance when it indicates that the clause is triggered if the property is vacant " '*beyond* a period of sixty days,' " (emphasis added) on the theory that the use of "beyond" is prospective-looking and must therefore commence at or after policy issuance. However, when the policy language is defined in terms of "days before [the] loss," the time period is clearly backward-looking from the date of the loss, and does not implicate policy issuance. (*Gas Kwick, Inc. v. United Pacific Ins. Co.* (11th Cir. 1995) 58 F.3d 1536, 1539.) There is no ambiguity in the instant policy; the period is backward looking from the date of the loss.

Moreover, we reject the trial court's conclusion that the vandalism coverage was illusory if the limitation was triggered by a 60-day vacancy period prior to the issuance of the policy. At the time the policy was issued, it was intended to run for the entire

20

year; 10 of 13 units were in escrow, and the HOA reasonably anticipated the units becoming occupied early in the policy period. Thus, the HOA purchased a policy which provided many other coverages immediately, and was expected to provide vandalism coverage shortly into the policy period. We see no reason why a particular coverage, which was anticipated to be triggered at some point later in the policy period, would be considered illusory simply because it was not active at the time of policy issuance.

We next turn to the meaning of "vacant," which is itself defined, in the conspicuous "Property Definitions" section of the policy, as follows: "(1) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations. [¶] (2) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is: [¶] (a) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; or [¶] (b) Used by the building owner to conduct customary operations."

It cannot reasonably be disputed that the insured, the HOA, was the owner of the building and not a tenant.[18] As such, we must determine whether at least 31% of its

---

[18] In opposition to the writ petition, Braum argues for the first time that the HOA may have been neither. There is no evidence in the record as to whether Joy had transferred ownership of the building to the HOA at the time the policy was issued – although it would defy reason for Joy to obtain insurance for the property in the name of the HOA if Joy itself still held record title to the building. In any event, the HOA's interest in the building is, of necessity, more akin to that of an owner than a tenant.

square footage was rented and used by tenants, or whether at least 31% of the building was used by the HOA to conduct customary operations. Neither is true. It is undisputed that none of the units were sold; it is clear that none were rented and being used. Moreover, the HOA was not using any of the building for any purpose; the construction was still being completed.[19] Braum suggests that "it is a fair interpretation of the exclusion that, for the exclusion to be applicable, the building must be completed . . . ."[20] We disagree. In *TRB Investments, Inc. v. Fireman's Fund Ins. Co.,*

---

Beyond that, even if Braum were to somehow successfully assert that the policy did not define "vacant," for the situation raised by these facts, we would turn to the plain meaning of the word, and conclude that the unoccupied building was vacant. Braum attempts to apply authority interpreting *different* policy language regarding vacancy to suggest that "vacant" does not mean "unoccupied." (*Foley v. Sonoma County etc. Ins. Co.* (1941) 18 Cal.2d 232, 234 [interpreting a clause which excluded coverage if the building was "vacant or unoccupied" to have different meanings for "vacant" (without inanimate objects) and "unoccupied" (not used as a living space)]). We find such authority inapposite if we are concerned with the plain lay meaning of "vacant." Indeed, the fact that Braum, no less than three times in his complaint, referred to the property as "vacant" at the time the policy was issued, confirms his understanding that the plain meaning of the term properly described the property, despite the presence of appliances and other objects which were subsequently removed.

[19]     Braum suggests that Joy was using the building for one of its business purposes: selling units. But Joy was not the insured; the HOA was. In any event, if units were offered for sale during that 60 day period, there is no suggestion in the record that anyone was engaged in the business of selling units from within the building, as opposed to Joy's normal business office. As no certificate of occupancy for the building had issued, no business could be located within it.

[20]     We note, in this regard, that Braum argues that Koram "was fully aware in placing insurance that the property was under construction. Steven Kim the underwriting manager and vice president of Koram so testified at his deposition." This is, at best, an overstatement of Kim's testimony. The testimony on which Braum relies reads as follows: "Q: Are you aware that, during the course of Koram placing insurance for this property, that the property was under construction? Are you aware, looking at the file, that this insurance was placed during the course of construction of the property?

*supra,* 40 Cal.4th 19, our Supreme Court addressed a vacancy exclusion which contained an express exception stating that buildings under construction are not considered vacant. (*Id*. at p. 22.) Such an exception was not present in the vacancy exclusion or elsewhere in the instant policy, and we cannot change the clear and plain language of the policy to provide coverage where none was intended. (*Belgrade v. National American Ins. Co.* (1962) 204 Cal.App.2d 44, 47.) In short, the property was indisputably vacant for 60 days prior to the loss, and the exclusion clearly applies.[21] As such, Braum cannot proceed against Travelers on his breach of contract cause of action.

3.      *Koram Owed Braum No Duty to Obtain Different Coverage*

Braum's professional negligence cause of action against Koram (and Travelers as its principal) is based on the theory that Koram breached a duty to him by not obtaining a policy which actually provided coverage for the instant loss. In other words, Braum,

[¶] A: Are you referring to [the] Travelers policy? [¶] Q: No. I'm referring to any -- [¶] A: Any -- [¶] Q: -- policy issued. Are you are that, during the time period that you placed insurance in this file, that the property was under construction? [¶] A: Yes." That Kim was aware that the property was under construction when placing *any* policy, such as one of the Lloyd's policies, does not mean that Kim was aware that the property was under construction when placing the Travelers policy at issue in this case.

[21]     To the extent Braum pursues the argument, made in his complaint, that Travelers is estopped to rely on the vacancy limitation on the basis that Travelers never investigated whether the units were, in fact, unoccupied, the argument is meritless. First, we note that No did, in fact, represent, in writing, that the property had 80% occupancy; thus, no further investigation was required. Second, Travelers made no representation to Braum on which estoppel could be based. Braum appears to believe that the certificate of insurance constituted a representation; but the certificate only represented that the policy referenced therein had been issued, not that any other requirements had been met. In any event, *Braum* did not rely on the certificate of insurance; EWB may have relied on the certificate in not informing Braum that he should obtain further coverage, but there is no admissible evidence that Braum was reasonable in relying on EWB's silence in this regard.

23

as a *loss payee*, argues that Koram breached a duty to Braum to provide the HOA with builder's risk insurance. Braum argues that this duty exists despite the fact that Joy had previously purchased builder's risk insurance from Koram, but No, on behalf of Joy and the HOA, had previously *chosen* to obtain a condominium policy for the HOA instead of renewing the builder's risk policy.

"Insurance brokers owe a limited duty to their clients, which is only 'to use reasonable care, diligence, and judgment in *procuring* the insurance *requested* by an *insured*.' [Citation, italics added.]" (*Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.* (2012) 203 Cal.App.4th 1278, 1283, second and third italics added.) " 'The rule changes, however, when—but only when—one of the following three things happens: (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided . . . , (b) there is a request or inquiry by the insured for a particular type or extent of coverage . . . , or (c) the agent assumes an additional duty by either express agreement or by "holding himself out" as having expertise in a given field of insurance being sought by the insured . . . . ' [Citation.] The agent who assumes additional duties, by holding herself out as having expertise in the insurance being sought by the insured, 'may be liable to the insured for losses which resulted as a breach of that special duty.' [Citations.]" (*Williams v. Hilb, Rogal & Hobbs Ins. Services of California, Inc.* (2009) 177 Cal.App.4th 624, 635-636.) "California law is well settled as to this limited duty on the part of insurance brokers." (*Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc., supra,* 203 Cal.App.4th at p. 1283.)

Koram breached no duty to Joy or the HOA, and Braum does not argue that it did. Koram procured the insurance that No had decided was best for the HOA. There is no suggestion in the record that: (1) Koram misrepresented the terms of the policy to Joy; (2) Joy specifically requested a continuation of its builder's risk policy; or (3) Koram held itself out as having expertise in selecting the proper type of insurance for the needs of Joy and the HOA.

Our conclusion with respect to the second exception, "a request or inquiry by the insured for a particular type or extent of coverage," might be different if there was evidence that Joy had presented Koram with the construction loan agreement and its separate agreement to provide insurance to EWB, and specifically requested Koram to obtain the insurance required by those agreements. (Compare *Jackson v. Aetna Life & Casualty Co.* (1979) 93 Cal.App.3d 838, 846-847 [lessor is an intended beneficiary of lessee's agreement with insurer's agent, when the lessee provided the agent with a copy of the lease requiring that the lessee obtain certain coverages for the lessor].) But Koram did not do so in this case. At most, Joy "forwarded" Van Wagenen's subsequent request to confirm coverage to Koram. There is no evidence that, when Joy forwarded that document to Koram, Joy in any way requested Koram to review the policy and modify it, where necessary, to comply with the terms of the request.[22] Joy and the HOA were Koram's clients; Koram's duty to provide insurance extended only so far as Joy

---

[22]     Again, we note that, although the agreement to provide insurance which Joy executed in connection with the construction loan required several types of insurance, including fire and extended coverage, builder's risk coverage and general liability, Van Wagenen's request sought confirmation of fire and extended coverage only.

25

and the HOA requested.  That is why Braum's third party beneficiary theory must necessarily fail.

We note, in this regard, the language of *Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc., supra,* 203 Cal.App.4th 1278, in which the court was concerned with a subcontractor insured who sought to impose a duty on the developer's insurance broker, who had placed the policy, to inform the subcontractor when the insurer subsequently became insolvent.  The court stated, "Although [the subcontractor] was an insured, and was given a certificate of insurance, it was not [the broker]'s client.  [The developer] was.  An insurance broker's client is the person or entity that contracts with the broker, communicates to the broker its insurance needs, reviews the quotes provided by the broker and decides what policy to purchase.  The minimal contact between [the broker] and [the subcontractor], that occurred over a year *after* [the broker] procured the policy on behalf of [the developer], also supports a finding of no duty on the part of [broker] to notify the subcontractor insureds." (*Id*. at p. 1290.)  In this case, Braum had *no* contact with Koram; he purports to find a duty because his assignor's agent sent a one-page facsimile to Joy, which Joy then forwarded to Koram, two weeks after Joy/HOA had already chosen the type of insurance they wanted and had applied for it.  We cannot hang a duty on so slender a reed.  Indeed, Braum believes that, because Van Wagenen's *request* found its way to Koram, and Koram *sent something* to Van Wagenen in response to the request, Koram was taking upon itself a duty, upon pain of civil damages, to provide Van Wagenen with everything Van Wagenen had requested.  This is simply not so.  Koram's duties ran only to Joy; in

26

the absence of evidence that Joy requested Koram to make certain the insurance complied with Van Wagenen's request, Koram took on no such obligation.[23]

Braum next relies on *Nowlon,* a case which extended a broker's duty beyond the insured to the "potential victims" of the insured, in the *specific context* of a negligence per se action based on the violation of a statute which was intended, in part, to protect those potential victims. *Nowlon* involved a slip and fall victim who sued the defendant whose negligence purportedly caused the injury. The defendant had obtained liability insurance through an insurance broker. The broker, however, had placed the policy with an insurer who had not been licensed to transact business in California and had since become insolvent. As the insurer was unlicensed in California, it was not a member of the California Insurance Guarantee Association (CIGA), which guarantees the obligations of insolvent insurers operating in California. The injured plaintiff brought suit against the broker, alleging negligence per se in the broker's violation of statutes which prohibit the sale of insurance in California for an insurer which is unlicensed in the state.[24] (*Id.* at pp. 1439-1440.)

---

[23] Indeed, we see no difference between the facts presented and the scenario which would have arisen if Joy had requested the certificate of insurance from Koram and then conveyed the certificate of insurance to Van Wagenen. Under that situation, Van Wagenen would have requested something from Joy, received something from Joy, and been in a position of being required to determine whether to accept what Joy had sent or request something further. That Koram sent the certificate of insurance directly to Van Wagenen, rather than to Joy for forwarding to Van Wagenen, does not mean that Koram undertook *Joy*'s obligation to fully respond to Van Wagenen's request.

[24] There is an exception for surplus line brokers, which was not applicable in *Nowlon.*

27

The *Nowlon* court noted that not all violations of statutes support causes of action for negligence, but that a presumption of negligence may arise if four prerequisites are established: "(1) the defendant violated a statute; (2) the violation proximately caused injury to the plaintiff; (3) the injury resulted from an occurrence which the statute was designed to prevent; and (4) the plaintiff was one of the class of persons for whose protection the statute was adopted." (*Nowlon, supra,* 1 Cal.App.4th at p. 1441.) The court concluded that the prohibition on selling insurance from unlicensed insurers was, in fact, designed so that "any contract of insurance sold to provide coverage for injury resulting from occurrences within California would be subject to all protections provided under California law," including that CIGA benefits would be available in the event of the insurer's insolvency. (*Id*. at p. 1445.) The court then considered if the injured plaintiff was a member of the class the statutes were designed to protect, or if, to the contrary, the statutes were meant only to protect the buyers of insurance. (*Id*. at p. 1445.) It was in this context that the court stated, "the duty of the broker or insurer, which is incurred in the procurement or issuance of an insurance policy, runs not only to those who contracted for the insurance policy but also 'runs directly to the class of potential victims of the insured.' " (*Id*. at p. 1447.)

Braum concededly is not pursuing a negligence per se action against Koram. He nonetheless focuses on the above quote to argue that, as a potential victim, Koram owed it a duty as well.[25] But the *Nowlon* court was referring only to the *statutory duty* at

---

[25]     We fail to see the theory on which Braum is a "potential victim" of the HOA; he argues that he is damaged because the HOA did not obtain vandalism insurance which

28

issue, the duty to place insurance only with licensed carriers. The court's language means only that, under the proper circumstances, a breach of a duty owed by the broker to its insured may also give rise to a cause of action on behalf of a victim of the insured who was foreseeably harmed by the broker's breach. The *Nowlon* language does not mean that every time an insured contracts with a broker to procure insurance, the broker's *general* duty to use reasonable care, diligence, and judgment in procuring the insurance requested by its client becomes a duty to anticipate the desires of any potential victims of the insured, and to use reasonable care, diligence and judgment to procure the insurance which *those victims* may ultimately desire the insured to possess. Such a theory would mean a broker is liable to an insured's victim (or, as Braum would have it, loss payee), *any time* a claim is denied pursuant to an exclusion or limitation in the policy for which the insured reasonably contracted. This is not the law. Koram owed Joy and the HOA its general duty to use reasonable care, diligence, and judgment in placing the policy sought by Joy and the HOA. Having complied with this duty, it owed no duty to Braum.

In opposition to Travelers' summary judgment motion, Braum identified several acts, or failures to act, on the part of Koram which he asserted constituted negligence. Yet he has failed to identify any legal basis on which Koram owed Braum a duty to perform these acts. Braum argues that Koram failed to inspect the sales and occupancy

Joy had been contractually bound to obtain. Braum is not an injured third party seeking recovery under the liability portion of the policy, he is simply a mortgagee loss payee, whose recovery is limited by the same limitations and exclusions which would apply if the insured had pursued the claim.

29

of the condominium units; yet a broker owes no general duty to investigate the representations of its insured. Braum argues that Koram misstated facts regarding sales and occupancy to Travelers;[26] Braum, however, provides no rationale under which he could recover for a misstatement of fact between an agent and principal. Braum argues that Koram failed to advise EWB that the policy contained a provision regarding occupancy, despite knowing that EWB had a construction loan; yet Koram's duty ran to its insured;[27] it had no duty to contact its insured's lender and inform it of any policy language. Braum argues that Koram failed to notify EWB, in the certificate of insurance, of the limitation on vandalism coverage. A certificate of insurance is merely evidence that a policy has been issued; it identifies the types of policies issued, the dates of coverage and the dollar limits of coverage. The document is not intended to inform the certificate holder of every, or any, limitation on or exclusion from coverage,[28] and no broker can be liable for failing to include such information in a certificate of insurance.

---

[26]     There is no factual support for this assertion; Koram conveyed to Travelers no more than what No had represented to Koram.

[27]     As noted, Koram provided the HOA with an application which stated a condition of the policy was: "Subject to . . . 80% occupancy."

[28]     Braum notes that Van Wagenen's request had asked for "a copy of the policy," not merely a certificate of insurance. Yet, when Koram sent only a certificate of insurance, Van Wagenen accepted it in satisfaction. Braum would hold Koram liable for EWB not knowing about the vacancy exclusion on the basis of Koram's failure to send the entire policy, as Van Wagenen had requested. This assumes that Koram, by virtue of having been forwarded Van Wagenen's request and sending a response to it, was accepting a duty to send Van Wagenen everything it had requested. As we have discussed, it did not.

We end our discussion with a somewhat obvious point. Braum, as EWB's assignee, was owed a contractual duty *by Joy* to obtain certain insurance coverage. Joy did not obtain that coverage; as such, Braum's remedy is with Joy. As Joy is apparently judgment-proof, Braum seeks, in this action, to recover against Joy's insurance broker, Koram. But Koram owed duties only to Joy, and satisfied those duties. Braum cannot manufacture a duty of care owed to him in the absence of any evidence that Joy had requested Koram to satisfy its contractual duties to EWB on its behalf. As such, Braum has no cause of action against Koram or Travelers for professional negligence.

## *DISPOSITION*

The petitions for writ of mandate are granted. Let a writ of mandate issue directing the trial court to vacate its orders denying the motions for summary judgment of Travelers and Koram and to issue a new and different order granting the motions. The stay of proceedings in the trial court is lifted. Travelers and Koram are to recover their costs in this writ proceeding.


## *CERTIFIED FOR PUBLICATION*



CROSKEY, J.

WE CONCUR:



KLEIN, P. J.



KITCHING, J.

32