Filed 6/24/14  Big Man Bakes v. Hoskins CA

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BIG MAN BAKES, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STEVEN HOSKINS, et al.,<br><br>    Defendants and Respondents. | B247998<br><br>(Los Angeles County<br>Super. Ct. No. BC465808) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Abraham Khan, Judge.  Affirmed.

Fink & Steinberg, S. Keven Steinberg for Plaintiff and Appellant.

Fernald Law Group, Brandon C. Fernald for Defendants and Respondents.

_____

Big Man Bakes, LLC sued insurance brokers Steven Hoskins and USI of Southern California Insurance Services (respondents) for negligence, breach of fiduciary duty, and breach of contract for failing to advise Big Man Bakes to obtain insurance that would have covered claims for sexual harassment and constructive discharge brought against Big Man Bakes by a former employee. The trial court granted respondents' motion for summary judgment, finding no triable issue existed as to whether respondents upheld their only duty of care, which was to procure the insurance Big Man Bakes actually requested, not to advise what insurance it should have sought. We affirm.

## Statement of Facts

### 1. Insurance Relationship at Issue

William Brown and his business partner, Claudine Grier, started a cupcake business called Big Man Bakes in 2009. Both had business experience and Grier had a masters degree in business administration from Columbia University.

In June 2009, Grier contacted USI, an insurance brokerage, to obtain insurance for Big Man Bakes. Grier was referred to Hoskins, an insurance broker in USI's small accounts department in charge of accounts generating less than $5,000 in revenue per year. Hoskins learned Grier sought basic insurance coverage for the cupcake business, which rented a small retail space and commercial kitchen and had no employees. Grier requested a quote for business property and liability coverage and informed Hoskins she wanted to keep the business's insurance costs low while still satisfying the landlord's and statutory insurance requirements.

Soon thereafter, Hoskins emailed Grier an insurance proposal based on their discussion. Grier responded with some corrections, including modifying the annual sales projection on which the insurance premium was based to get a lower premium. In her emails to Hoskins, Grier referred to the proffered insurance as "business insurance."

Hoskins obtained a quote based on Grier's information and sent her a proposal, in which the insurance company referred to the policy as "business insurance." Grier accepted the proposal, and Hoskins placed the business property and liability insurance with the chosen insurance company.

2

The following month, Grier contacted Hoskins to request workers' compensation insurance, informing him Big Man Bakes had hired an employee. Hoskins sent Grier two workers' compensation insurance proposals, both of which included the phrase "employers liability insurance." Grier responded, "It looks like Hartford is the cheapest. It offers us the statutory coverage needed. We'd like to lock into the workers comp at [the annual salaries provided] with Hartford insurance."

Hoskins then placed the workers' compensation policy and sent Grier a copy of the policy. Hoskins advised Grier that higher limits and additional coverages might be available and she could contact him to discuss those options. Thereafter, Hoskins had no further communication with Grier or anyone from Big Man Bakes.

In March 2011, a former employee sued Big Man Bakes and Brown for sexual harassment and constructive discharge.

## 2. Present Litigation

On July 19, 2011, Big Man Bakes sued respondents for negligence, breach of fiduciary duty, and breach of implied contract for failing to recommend and obtain insurance coverage to protect Big Man Bakes against all claims arising out of its operations. Big Man Bakes alleged respondents breached their duty of care by failing to recommend and assist Big Man Bakes to obtain employment practices liability insurance (EPLI), which would have covered the claims brought against it for sexual harassment and constructive discharge.

In February 2012, Grier passed away before her deposition could be taken.

Respondents moved for summary judgment, arguing they were under no duty to procure all potentially applicable insurance coverages for Big Man Bakes. In support of their motion, Hoskins declared Grier requested only the policies he procured and corroborated his declaration with insurance files containing his notes and emails with Grier.

Big Man Bakes opposed the motion, contending respondents breached their duty of care by failing to advise Big Man Bakes to obtain EPLI coverage. In support of its opposition, Big Man Bakes' insurance expert, Scott Cooper, declared respondents'

3

conduct in serving Big Man Bakes' insurance needs "was not within the insurance industry practice and custom[,] fell below the standard of care," and constituted professional negligence, a breach of fiduciary duty, and a breach of contract. He declared respondents were required to provide Big Man Bakes with advice and guidance on all types of insurance, including EPLI. The trial court sustained 9 of 14 of respondents' objections to Cooper's declaration on the ground that it contained impermissible legal opinion.

Brown testified in deposition that Grier contacted USI to obtain insurance necessary to open the cupcake business. He stated Grier told him she informed Hoskins about the business, asked what was needed to move forward, and requested the necessary insurance. Brown asserted Grier depended on Hoskins to advise her because she knew nothing about what insurance was needed. Brown also testified that obtaining insurance for Big Man Bakes was Grier's job. He had no communication with Hoskins, had no discussions with Grier about selecting a broker or selecting insurance, and did not know what insurance Grier procured. The trial court sustained respondents' objections to Brown's testimony as hearsay and speculation.

At the hearing, the trial court noted that because Grier, who was the only one to communicate with Hoskins, was now deceased, Brown had no admissible evidence of what she said to Hoskins about Big Man Bakes' insurance needs. In response, Big Man Bakes argued Hoskins's declaration and insurance files showed Grier requested all possible insurance and created a triable issue of material fact as to Hoskins's duty to advise Grier to purchase EPLI. Respondents countered that Hoskins's declaration that Grier specifically requested three forms of insurance, along with the corroborating notes and emails, established Grier was interested in obtaining only the bare minimum required, and requested specific types of insurance, which Hoskins dutifully procured.

On March 13, 2013, the trial court granted respondents' motion for summary judgment and dismissed the action, finding the undisputed facts established respondents breached no duty to recommend and obtain insurance to cover all possible claims for Big Man Bakes. Big Man Bakes timely appealed.

4

**Discussion**

## 1.      Summary Judgment

Big Man Bakes argues triable issues of material fact exist as to whether respondents breached their duty as brokers to recommend and procure EPLI.

A defendant is entitled to summary judgment if the record establishes there is no question of material fact and as a matter of law none of plaintiff's asserted causes of action can prevail.  (Code of Civ. Proc., § 437c, subd. (c); *Travelers Property Casualty Company of America v. Superior Court* (2013) 215 Cal.App.4th 561, 574.)  To obtain summary judgment, a moving defendant must show one or more elements of each cause of action cannot be established or a complete defense exists.  (Code Civ. Proc., § 437c, subd. (p)(2).)  Once the moving defendant has met its burden, the burden shifts to the plaintiff to show a triable issue of material fact exists as to each cause of action or asserted defense.  (*Ibid*.)  We review the trial court's ruling on a motion for summary judgment de novo.  (*Adams v. Explorer Ins. Co.* (2003) 107 Cal.App.4th 438, 445.)

## 2.      Big Man Bakes' Causes of Action

Big Man Bakes alleged causes of action for negligence, breach of fiduciary duty, and breach of an implied contract stemming from respondents' failure to advise Big Man Bakes to obtain EPLI coverage.  To establish negligence, a plaintiff must prove:  (1) a legal duty of care owed to plaintiff, (2) a breach of that duty, (3) injury as a result of the breach, and (4) damages.  (*Wallman v. Suddock* (2011) 200 Cal.App.4th 1288, 1308-1309.)  To establish a cause of action for breach of fiduciary duty, a plaintiff must prove one of the parties was "duty bound to act with the utmost good faith for the benefit of the other party."  (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29.)  A cause of action for breach of an implied contract must allege the existence of a contract implied in fact, consisting of "'obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.'  [Citation.]"  (*Retired Employees Association of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1178.)

5

All of these causes of action depend on the existence of a duty of care on the part of respondents as insurance brokers. (See *Wilson v. All Service Ins. Corp.* (1979) 91 Cal.App.3d 793, 799.) "Whether a duty of care exists is a question of law for the court." (*Wallman v. Suddock*, *supra*, 200 Cal.App.4th at p. 1309.)

**3.    An Insurance Broker's Duty of Care**

"'Insurance brokers owe a limited duty to their clients, which is only "to use reasonable care, diligence, and judgment in *procuring* the insurance requested by an *insured*." [Citation, italics added.]'" (*Travelers Property Casualty Company of America v. Superior Court*, *supra*, 215 Cal.App.4th at p. 578.) A broker breaches this duty of care if, and only if: "'(a) the [broker] misrepresents the nature, extent or scope of the coverage being offered or provided . . . , (b) there is a request or inquiry by the insured for a particular type or extent of coverage . . . , or (c) the [broker] assumes an additional duty by either express agreement or by "holding himself out" as having expertise in a given field of insurance being sought by the insured.' [Citation.]' [Citation.]" (*Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.* (2012) 203 Cal.App.4th 1278, 1283 (*Pacific Rim*).)

"California law is well settled as to this limited duty on the part of insurance brokers." (*Pacific Rim*, *supra*, 203 Cal.App.4th at p. 1283.) Unlike the attorney-client fiduciary relationship, in which the attorney "must represent his or her clients zealously within the bounds of the law [citation], a broker only needs to use reasonable care to represent his or her client." (*Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1123.) Under this general duty of reasonable care, a broker has no duty to advise the client on specific insurance matters or procure a policy affording the client complete liability protection. (*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 956.) To require insurance brokers, who operate solely as middlemen, to advise and recommend to clients all available insurance would fundamentally alter the duties of insurance brokers and

6

greatly increase the cost of procuring insurance.[1]  (See *Pacific Rim*, *supra*, 203 Cal.App.4th at p. 1285.)

## 4.     Respondents Established They Satisfied Their Duty of Care to Big Man Bakes

There is no dispute that Hoskins procured the property, liability, and workers' compensation insurance Grier requested.  Big Man Bakes first argues Hoskins misrepresented that the provided insurance included EPLI coverage by (1) providing workers' compensation proposals that included "employers' liability insurance," and (2) stating one policy was for "business insurance."  We disagree.

In response to Grier's specific request for workers' compensation insurance, Hoskins provided her with two proposals, one entitled "Worker's Compensation Proposal" and the other entitled "Workers Compensation Insurance Proposal."  Both stated they provided two types of coverage, "workers' compensation insurance" and "employers liability insurance."  Directly below the words "employers liability insurance," the proposals spelled out what was covered:  bodily injury by accident, with a policy limit of $1,000,000 per accident, and bodily injury by disease, with a policy limit of $1,000,000 per employee up to a total of $1,000,000.[2]  Sexual harassment is clearly

---

[1] An insurance broker is "a person who, for compensation and on behalf of another person, transacts insurance other than life . . . with, but not on behalf of, an insurer."  (Ins. Code, § 33.)  An insurance agent is "a person authorized, by and on behalf of an insurer, to transact all classes of insurance other than life, . . . on behalf of an admitted insurance company."  (Ins. Code, § 31.)  The distinctions between agent and broker are not at issue in the case at bar.  (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group) ¶ 2:57 [the ways in which a broker may breach his or her duty of care "are similar to those applicable to insurance agents"].)

[2] "Workers' compensation policies generally contain two types of coverage:  The first is workers' compensation insurance . . . 'under which the insurer agrees to pay all workers' compensation and other benefits that the employer must legally provide to covered employees who are occupationally injured or disabled.' [Citation.]" (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 36.)  The second is employers' liability insurance, under which the insurer agrees to protect "'employers against lawsuits by employees who are injured in the course of employment,

7

neither bodily injury by accident nor by disease. Thus, when considered in context, "employers liability insurance" could not reasonably be understood to provide coverage for an employee's claims for sexual harassment and constructive discharge.

Moreover, the evidence indicated Grier made no such assumption. Upon being provided with the two proposals, Grier responded, "It looks like Hartford is the cheapest. It offers us the *statutory coverage needed*. We'd like to lock into the *workers comp* at [the annual salaries provided] with Hartford insurance." (Italics added.) Hoskins then placed the insurance and advised Grier that higher limits and additional coverages might be available and she could contact him to discuss those options. She never did so. These facts demonstrate Hoskins represented, and Grier understood, that the provided proposals addressed workers' compensation insurance only, and did not include insurance to cover claims for employment-related sexual harassment or constructive discharge.

Big Man Bakes is also unpersuasive in its argument that Hoskins misrepresented that the policies included EPLI because in one proposal the insurance company referred to the policy as "business insurance." In *Eddy v. Sharp* (1988) 199 Cal.App.3d 858, the court found a triable issue of material fact as to whether an insurance agent breached his duty of care when the agent affirmatively represented to the insureds that the provided policy covered all risks, subject only to eight listed exclusions, although the policy was subject to additional, unlisted exclusions. (*Id.* at pp. 866-877.) Here, Hoskins's act of providing Grier with a proposal that included the term "business insurance" made no affirmative representation that the insurance covered all claims that could be made against the business, such as claims for employment-related sexual harassment or constructive discharge lawsuits. On the contrary, Hoskins explicitly informed Grier that additional coverages were available, which indicated the provided policies did *not* include all types of insurance.

---

but whose injuries are not compensable under the workers' compensation laws' [citation]" or "the employee is not subject to the workers' compensation law." (*Ibid.*; *Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. omitted.) "Generally, these two kinds of coverage are mutually exclusive." (*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, *supra*, 41 Cal.3d at p. 916.)

Similarly, Big Man Bakes contends Hoskins failed to procure the requested EPLI coverage, alleging Grier's use of the term "business insurance" in her emails to Hoskins informed him she wanted all available insurance, including EPLI. This argument has no merit. In *Wallman v. Suddock*, *supra*, 200 Cal.App.4th 1288, insureds sued their insurance agent, contending the agent failed to obtain additional coverage they requested that would have covered any claims arising out of their past or present business. (*Id.* at pp. 1295-1296, 1310.) The court disagreed, holding that the insureds' vague and general requests for insurance to protect them from "any possible lawsuit that could happen in the future" created no duty to procure the additional coverage because the requests were insufficient to put the agent on notice that the insureds wanted additional coverage. (*Id.* at pp. 1311-1312.) Here, Grier specifically requested property, liability, and workers' compensation insurance for Big Man Bakes, which Hoskins dutifully procured. Although in her emails Grier referred to the type of insurance she was purchasing as "business insurance," these references were too conclusory and non-specific to put Hoskins on notice that she wanted EPLI or all available insurance for Big Man Bakes.

Finally, Big Man Bakes argues Hoskins, as USI's small accounts manager, assumed a duty to advise Grier to obtain additional insurance by holding himself out as an expert in the specific field of insurance Big Man Bakes required because Grier was referred to him. This argument is meritless. In *Williams v. Hilb, Rogal & Hobbs Insurance Services of California, Inc*. (2009) 177 Cal.App.4th 624, an insurance agent developed a specific insurance package for dealerships of a spray-on truck bed lining. (*Id.* at p. 628.) To promote the insurance package, she visited the lining company's headquarters, spoke about insurance needs at informational seminars for new dealerships, and represented and marketed the insurance packages as specifically designed for the dealerships. (*Ibid*.) The court held the agent breached her duty of care by failing to procure all necessary insurance for a dealership because the agent's actions indicated she would provide all the insurance necessary for that specific line of business. (*Id.* at pp. 637-638.) Here, no fact suggests Hoskins impliedly promised to provide all necessary insurance to cover Big Man Bakes' insurance needs. Although Grier was referred to

9

Hoskins as USI's small accounts manager by another broker at USI, that fact alone was insufficient to establish Hoskins was holding himself out as an expert in a specific insurance field.

Respondents established they upheld their limited duty of care to Big Man Bakes, and the burden then shifted to Big Man Bakes to raise a triable issue of material fact.

## 5. Big Man Bakes Failed to Show a Triable Issue of Material Fact

To create a triable issue, Big Man Bakes offered Scott Cooper's declaration and Brown's deposition testimony. As noted above, Cooper declared respondents' conduct fell below the standard of care in the insurance industry and constituted professional negligence, a breach of fiduciary duty, and a breach of contract. He opined that Hoskins's failure to discuss and offer EPLI coverage fell below the standard of care within the insurance industry and constituted a breach of fiduciary duty and breach of contract. The trial court sustained respondents' objections that Cooper's declaration constituted impermissible legal opinion.

Big Man Bakes argues the trial court erred in sustaining respondents' objections to Cooper's declaration. "'Although it is often said that an appellate court reviews a summary judgment motion "de novo," the weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard. [Citations.]'" (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.) "In appeals challenging discretionary trial court rulings, it is the appellant's burden to establish an abuse of discretion." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.) "There must be a showing of a clear case of abuse and miscarriage of justice in order to warrant a reversal." (*Ibid.*) Big Man Bakes has failed to meet its burden.

A party opposing a summary judgment motion may use an expert's declaration to raise a triable issue of fact provided the expert's opinion relates to a subject that is beyond common experience and will assist the trier of fact. (Evid. Code, § 801, subd. (a); *Towns v. Davidson* (2007) 147 Cal.App.4th 461, 472.) An expert may not, however, "testify about issues of law or draw legal conclusions," and "[a] party cannot rely upon an

10

expert's opinion to establish duty, which is a question of law for the court." (*Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 122; *Thompson v. Sacramento City Unified School District* (2003) 107 Cal.App.4th 1352, 1373.)

Here, Cooper declared respondents had a duty to provide Big Man Bakes with advice on all types of insurance, including EPLI. The trial court was well within its discretion to disregard Cooper's attempt to testify about issues of law. (See *Fitzpatrick v. Haye*s (1997) 57 Cal.App.4th 916, 929.) In any event, Cooper's opinion is directly contradicted by existing law, which holds that a broker has no obligation to advise the client on specific insurance matters or procure a policy affording the client complete liability protection. (See *Jones v. Grewe*, *supra*, 189 Cal.App.3d at p. 956.)

Brown testified Grier told him she informed Hoskins about the cupcake business and requested the necessary insurance to open such a business. The trial court sustained respondents' objections to Brown's testimony as speculation and hearsay. Big Man Bakes argues the trial court erred in sustaining the objections. We disagree.

Hearsay is evidence of a statement made other than by the witness under oath at the hearing, offered to prove the truth of the matter stated. Hearsay is generally considered to be unreliable, and for that reason is inadmissible unless an exception applies. (Evid. Code, § 1200.) Here, Brown admitted he did not personally know what Grier specifically requested from Hoskins. He was not involved in communicating with Hoskins and did not discuss with Grier the details of her communications with him. Thus, Brown's hearsay testimony as to what Grier and Hoskins discussed or what Grier requested from Hoskins was entirely speculative. Moreover, due to her death, respondents had no opportunity to cross-examine Grier and the court had no opportunity to evaluate her credibility. The testimony was therefore properly excluded as hearsay evidence. (See *People v. Williams* (1990) 222 Cal.App.3d 911, 916 [the main reasons for excluding hearsay evidence are that the statements are not made under oath; the adverse party cannot cross-examine the person who made them; and the trier of fact cannot observe the person's demeanor while making them].)

11

We conclude the trial court properly sustained respondents' objections to Cooper's declaration and Brown's deposition testimony. With no evidence to establish the existence of a breach of duty, Big Man Bakes failed to meet its burden, and respondents were entitled to summary judgment.

**Disposition**

The judgment is affirmed. Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, Acting P. J.


WILEY, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12