Filed 10/4/13; pub. order 10/28/13 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO ASSEMBLERS, INC., | D062406 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00051326-CU-PN-NC) |
| WORK COMP FOR LESS INSURANCE SERVICES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Thomas P.

Nugent, Judge. Affirmed.

Edwards & Hunter, Richard P. Edwards and Ellen E. Hunter for Plaintiff and

Appellant.

Murchison & Cumming, Kenneth H. Moreno and Scott J. Loeding for Defendant

and Respondent.

INTRODUCTION

San Diego Assemblers, Inc. (Assemblers) appeals from a judgment of dismissal following the court's granting of summary judgment in favor of Work Comp for Less Insurance Services, Inc. (Broker). Assemblers contends the court erroneously determined Broker had no duty to procure a liability insurance policy for Assemblers covering Assemblers's prior completed work. Assemblers additionally contends its claim is not barred by the superior equities doctrine or the statute of limitations. It also contends that, if Broker owed a duty to Assemblers, the court erroneously sustained Broker's objections to the declaration of Assemblers's standard of care expert.

We conclude Assemblers's claim is barred by the superior equities doctrine. We further conclude Broker owed no duty to procure prior completed work coverage for Assemblers. We, therefore, affirm the judgment.

BACKGROUND

Broker procures insurance for businesses. Assemblers was a remodeling contractor. In 2000, Assemblers contacted Broker seeking a basic liability policy. Assemblers told Broker the policy limits its clients required, but never described the types of coverage it wanted. Assemblers repeatedly told Broker to procure the least expensive policy. Broker procured policies and provided them to Assemblers's president, who read them. The president never had any questions for Broker after reading the policies and never asked for a different policy or different coverage. Assemblers never told Broker it did not want a policy with a manifestation endorsement or with a prior completed work exclusion. In addition, Broker never misrepresented any coverage

2

contained in Assemblers's policies and never failed to obtain the coverage Assemblers requested.

In April 2004 Assemblers performed work for a restaurant. In July 2008 an explosion and resulting fire occurred at the restaurant, causing substantial property damage. The restaurant's insurer, Golden Eagle Insurance (Golden Eagle), paid for the damage under an insurance policy for which the restaurant paid premiums. Within a month of the fire, Golden Eagle began pursuing Assemblers to pay for the damage. Assemblers tendered Golden Eagle's claim to Lincoln General Insurance Company (Lincoln General), the insurer who provided liability insurance for Assemblers in 2004, and Preferred Contractors Insurance Company (Preferred), the insurer providing liability insurance for Assemblers in 2008.

In an October 14, 2008, telephone conversation, a Preferred claims specialist informed Assemblers's president that Assemblers's policy included a prior completed work exclusion. Assemblers's president indicated he was aware of the exclusion and that Lincoln General had also denied coverage. He told the claims specialist he had informed Golden Eagle he had no coverage for the loss and Golden Eagle was welcome to sue him.

Preferred denied coverage in writing on October 23, 2008, asserting a prior completed work exclusion. Lincoln General denied coverage on February 10, 2009, asserting a manifestation endorsement limiting coverage to injury or damage first manifested during the policy period.

After learning of the denial of coverage, Assemblers did not ask Broker why Broker had not obtained a different type of policy for Assemblers and Assemblers had no

3

criticisms of Broker's failure to do so. Assemblers also did not ask Broker to change any of Assemblers's policies to include the coverages excluded by the Lincoln General and Preferred policies because the coverages were cost-prohibitive.

The month after Lincoln General denied coverage in writing, Golden Eagle sued Assemblers and subsequently obtained a default judgment. Assemblers assigned to Golden Eagle any claims Assemblers had against Broker and then petitioned for bankruptcy relief.

Golden Eagle brought the instant lawsuit against Broker in Assemblers's name alleging Broker negligently failed to procure Assemblers insurance coverage adequate to cover the restaurant fire. Broker moved for summary judgment asserting among its arguments that it had no legal duty to provide Assemblers with different or additional coverages, Assemblers's claim was barred by the superior equities doctrine and Assemblers's claim was barred by the statute of limitations.

Assemblers opposed each of these points. As part of its opposition, it submitted a declaration from an insurance expert. Broker objected to the declaration on, among other grounds, the declaration lacked foundation and failed to established expertise in the standard of care for brokers providing insurance to contractors in Southern California.

The court granted Broker's motion, agreeing Broker owed no legal duty to provide Assemblers with a different insurance policy that would have covered the subject loss. The court also sustained Broker's objections to the declaration of Assemblers's expert on the grounds the declaration failed to establish the expert possessed expertise on the standard of care for brokers for contractors in Southern California. The court further

4

noted, "the scope of the legal duty of care is established by the courts, not by expert testimony." The court declined to rule on any of Broker's other asserted grounds for summary judgment.

## DISCUSSION

" 'Because this case comes before us after the trial court's grant of summary judgment, we apply these well-established rules: " ' "[W]e take the facts from the record that was before the trial court when it ruled on that motion," ' " and we " ' " ' "review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' " ' " [Citation.] We also " ' "liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " ' [Citation.] 'We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale.' " (*Hartnett v. Crosier* (2012) 205 Cal.App.4th 685, 689-690.)

### I

### *Superior Equities Doctrine*

Although the trial court declined to address this issue below, Broker contends Assemblers's claim is barred by the superior equities doctrine. We agree.

The record shows and the parties do not dispute the restaurant's insurer, Golden Eagle, filed this action against Broker as Assemblers's assignee. "An insurer's right to subrogation is delimited by the application of equitable principles and not by the law of assignments. '[O]ne who asserts a right of subrogation, whether by virtue of an

5

assignment or otherwise, must first show a *right in equity* to be entitled to such subrogation, or substitution[.]' (*Meyers v. Bank of America National Trust & Savings Association* (1938) 11 Cal.2d 92, 96 (*Meyers*).) Equitable subrogation requires an insurer to establish that its equitable position is superior to the position of the party to be charged." (*Dobbas v. Vitas* (2011) 191 Cal.App.4th 1442, 1446.)

An insurer cannot establish its position is equitably superior to the party to be charged if the party is not the wrongdoer whose act or omission caused the underlying loss or is not otherwise legally responsible for the underlying loss. (*Dobbas v. Vitas*, *supra*, 191 Cal.App.4th at p. 1454; *State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1112 ["the aim of equitable subrogation is to shift a loss for which the insurer has compensated its insured to one who caused the loss, or who is legally responsible for the loss caused by another and whose equitable position is inferior"].) Here, there is no evidence Broker caused the restaurant fire. There is also no evidence Broker agree to indemnify Assemblers for causing the restaurant fire. Golden Eagle, therefore, cannot establish its position is equitably superior to Broker's. (*Dobbas v. Vitas*, at p. 1454 [an insurer is not in a equitably superior position to a third party who agreed to procure insurance for a loss, but did not cause the loss or agree to indemnify for the loss].)

The fact Golden Eagle is acting as Assemblers's assignee in this case does not alter our analysis. "[W]here by the application of equitable principles, a surety has been found not to be entitled to subrogation, an assignment will not confer upon him the right to be so substituted in an action at law upon the assignment. His rights must be measured by

the application of equitable principles in the first instance, his recovery being dependable upon a right in equity, and not by virtue of an asserted legal right under an assignment." (*Meyers*, *supra*, 11 Cal.2d at p. 97; accord, *Dobbas v. Vitas*, *supra*, 191 Cal.App.4th at p. 1455.)

## II

### *Duty*

Even if Assemblers's claim was not barred by the superior equities doctrine, Broker contends Assemblers cannot establish Broker owed a duty to Assemblers to procure liability insurance with prior completed work coverage. We agree with this contention as well.

As we recently explained, under well-settled law, "[i]Insurance brokers owe a limited duty to their clients, which is only 'to use reasonable care, diligence, and judgment in *procuring* the insurance requested by an insured.' [Citations.] Accordingly, an insurance broker does not breach its duty to clients to procure the requested insurance policy unless '(a) the [broker] misrepresents the nature, extent or scope of the coverage being offered or provided . . . , (b) there is a request or inquiry by the insured for a particular type or extent of coverage . . . , or (c) the [broker] assumes an additional duty by either express agreement or by "holding himself out" as having expertise in a given field of insurance being sought by the insured.' " (*Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.* (2012) 203 Cal.App.4th 1278, 1283 (*Pacific Rim*).)

Here, Assemblers does not assert and has not produced evidence Broker breached its limited duty to Assemblers in any of the above respects.  Rather, Assemblers seeks to hold Broker accountable for breaching a previously unrecognized implied contractual duty to investigate Assemblers's coverage needs and procure the requisite coverage to meet those needs, even if Assemblers did not request the coverage and, as appears from the record, probably could not have afforded it.

Assemblers touts many policy reasons for recognizing this implied contractual duty.  These reasons revolve around Assemblers's assertion that recognizing the implied contractual duty would ensure fairness and equity by holding insurance brokers to the same standards as other professionals.  Whatever the merits of these policy arguments, it is not difficult to conceive of countervailing policy considerations, including the likelihood such an implied contractual duty might cause brokers to oversell insurance to their clients in an effort to avoid the prospect of later professional liability.

We are also mindful that a decision to imply a duty here would effectively mandate prior completed work coverage in all contractor general liability policies, which could appreciably increase the cost of the policies without directly benefitting the insureds.  This case presents such an example as it appears the only party who would have directly benefited from the prior completed work coverage is Golden Eagle.  The restaurant would not have directly benefited from the coverage because its losses were already covered by the policy it purchased from Golden Eagle.  Assemblers also would not have directly benefited from the coverage because it was essentially insolvent at the time of the loss and had no assets to protect.

As we explained in *Pacific Rim*, balancing these types of considerations is properly the function of the Legislature, not the courts. (*Pacific Rim*, *supra*, 203 Cal.App.4th at p. 1285.) If imposing a broad duty on brokers to affirmatively determine and procure insurance to meet an insured's coverage needs, or mandating prior completed work coverage in all contractor general liability policies, " 'is in the interest of the public . . . , the people of California, by initiative or through the Legislature, can create that duty . . . .' [Citation.] 'We may not legislate on the subject in their stead.' " (*Id.* at p. 1287.)

Given our conclusions that Assemblers's claim is barred by the superior equities doctrine and Broker owed no legal duty to Assemblers to procure insurance with prior completed work coverage, we need not address Broker's contention Assemblers's claim is barred by the statute of limitations. We also need not address Assemblers's contention the court erred by sustaining Broker's objections to the declaration of Assemblers's standard of care expert.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its appeal costs.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.

9

Filed 10/28/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO ASSEMBLERS, INC., | D062406 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00051326-CU-PN-NC) |
| WORK COMP FOR LESS INSURANCE SERVICES, INC., | |
| Defendant and Respondent. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion filed October 4, 2013, is ordered certified for publication.

The attorneys of record are:

Edwards & Hunter, Richard P. Edwards and Ellen E. Hunter, for Plaintiff and Appellant.

Murchison & Cumming, Kenneth H. Moreno and Scott J. Loeding, for Defendant and Respondent.

McCONNELL, P. J.