Filed 1/24/25  Sims v. Farmers Group CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| LIZA SIMS, Individually and as Guardian ad litem, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>FARMERS GROUP, INC., et al.,<br><br>    Defendants and Respondents. | C097755<br><br>(Super. Ct. No. 19CV01700) |

Plaintiff Liza Sims' mother owned a house in Magalia, California, that was insured under a policy issued to her by Farmers Insurance.  Before the Camp Fire, Sims lived alone in her mother's house and operated a cosmetic tattoo business there.  After the house was destroyed by the Camp Fire in 2018, the insurance company paid Sims' mother the limits available under her policy but denied Sims' claim for the loss of her personal and business property.  Sims sued Farmers Group, Inc. (Farmers) and insurance

1

agent Dawn Foster (Foster or agent) (collectively, defendants) for negligent misrepresentation and professional negligence.

The trial court granted defendants' motions for summary judgment, concluding Sims' claims against them fail as a matter of law because Sims (1) cannot establish the agent's alleged misrepresentations caused any harm to Sims, and (2) cannot establish defendants owed or breached any duty of care to Sims. Sims appeals, arguing that the court erred because she raised a triable issue of material fact regarding causation and the court applied an incorrect standard in finding no duty. We will affirm.

BACKGROUND FACTS AND PROCEDURE[1]

Sims' mother, Edna Gleason (Gleason), was the owner of a house located on Andover Drive in Magalia, California (the Andover property). In October 2013, Sims moved from Alaska and began living alone at the house. Several months later, Sims began operating her cosmetic tattoo-related business out of the house.

When Sims first moved into the house, the property was insured under a homeowners' insurance policy issued to Gleason by a Farmers Insurance Group company. In August 2017, the homeowners' insurance policy was changed to a landlord insurance policy. Because Sims was not a named or additional insured on either policy, she was not informed of the change. Although the new policy remained in place through the date of the Camp Fire, neither Sims nor Gleason ever asked the insurer to add Sims as a named insured.

---

[1] Review of this matter was made more difficult by the poor quality of the separate statements, which omit facts that are material and include facts that are immaterial. Nevertheless, we have discretion to overlook these procedural errors and consider evidence not cited in the separate statements. (*Ghazarian v. Magellan Health, Inc*. (2020) 53 Cal.App.5th 171, 183.) We exercise that discretion here to determine whether triable issues of material fact exist and whether the moving parties are entitled to summary judgment as a matter of law.

On November 8, 2018, the Camp Fire destroyed the Andover property. Thereafter, Sims submitted an insurance claim for the loss of the dwelling as well as the loss of Sims' personal property and business equipment and inventory. Within weeks of receiving the claim, the insurer (Fire Insurance Exchange) paid Gleason $392,480, which represented the limits under the policy. The insurer orally advised Sims that her personal and business property was not covered under the policy.

In June 2019, Sims, on her own behalf and as guardian ad litem for Gleason, filed a complaint for damages against Foster, Farmers, PG & E Corporation, and Pacific Gas & Electric Company. With respect to defendants, the complaint alleges two causes of action, for negligent misrepresentation and professional negligence. Specifically, the complaint alleges that, at or about the time Sims occupied the property, she had a conversation with Foster regarding insurance coverage for the property and Foster assured her "the homeowners insurance policy then in force covered the premises and its contents." The complaint alleges that Sims relied upon this "misrepresentation" and therefore did not purchase a separate "tenant" policy to cover her personal and business property. The complaint also alleges that Foster breached a duty of care to Sims by failing to advise her of the availability and advisability of purchasing a separate policy to cover such property. As a proximate result of Foster's acts, the complaint alleges that defendants are liable for damages in excess of $400,000.

In March 2022, Foster and Farmers each filed a motion for summary judgment. Foster argued that Sims' claims against her failed because: (1) Sims cannot establish Foster made the alleged misrepresentations; (2) Sims cannot establish that she reasonably and detrimentally relied on the alleged misrepresentations; and (3) Sims cannot prove that Foster breached any duty of care owed to Sims.

Farmers, in its motion, argued that it cannot be held vicariously liable for Foster's alleged acts because: (1) it is not an insurance company and Foster was not acting as a Farmers agent; (2) the statements that Foster allegedly made about the homeowners'

3

policy were true; (3) Sims cannot establish that she justifiably relied, to her detriment, upon Foster's alleged misrepresentations; (4) Foster did not breach any duty to Gleason or owe any duty to Sims.

In opposition, Sims presented evidence that Foster, acting as an agent, made representations during two meetings in 2013 and 2014 that Sims' personal and business property would be covered under Gleason's then-existing homeowners' insurance policy. Sims did not dispute that the homeowners' insurance policy subsequently was changed to a landlord insurance policy in 2017, before the Camp Fire. But Sims disputed that Gleason requested the change, arguing that Gleason "did not have the mental capacity to make or understand the effect of such a change." And since Sims was not informed of the change, she argued that it was reasonable for her to rely upon Foster's representations about coverage under the prior homeowners' insurance policy.

In addition, Sims argued that Foster, by making representations, assumed a duty to advise Gleason and Sims about the adequacy of the insurance coverage. Sims argued that Foster breached that duty by terminating the homeowners' policy and failing to advise Sims that she needed to purchase additional insurance.

Defendants replied to the oppositions and filed evidentiary objections to Sims' declaration and to portions of the declaration of Sims' expert, David Frangiamore.

After a hearing, the trial court granted the motions for summary judgment. The court ruled that Sims could not establish Foster's alleged misrepresentations caused harm to Sims because Foster's statements related to a different insurance policy, which was no longer in effect at the time of the Camp Fire. The court further ruled that Sims could not establish Foster breached a duty to Sims because the duties of an insurance agent run only to the client and the evidence established Sims was not Foster's client. Because the claims against Farmers were derivative of the claims against Foster, the court ruled that they failed for the same reasons. In reaching its decision, the court sustained defendants' objections to the Sims declaration because it did not comply with Code of Civil

4

Procedure section 2015.5,[2] which requires declarations to be made "under the laws of the State of California."[3]

Sims filed a corrected declaration and sought reconsideration of the trial court's ruling, arguing that the corrected declaration constituted a new circumstance, and that admissibility of the declaration created triable issues of material fact to defeat the motions for summary judgment. Defendants opposed the motion.

The trial court ruled that the motion for reconsideration satisfied the criteria of section 1008 but concluded that the corrected declaration did not create a triable issue of material fact to defeat summary judgment. Thus, the practical effect of the court's ruling was to grant the motion for reconsideration, but to affirm the prior ruling granting summary judgment in favor of defendants. (*Randy's Trucking, Inc. v. Superior Court of Kern County* (2023) 91 Cal.App.5th 818, 844.)

Sims timely appealed from the judgments entered after the order granting summary judgment.

DISCUSSION

I

*Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) Under the summary judgment law (§ 437c), any party to an action may move for summary judgment on a claim or defense. (*Aguilar,*

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

[3] The trial court also (1) sustained in part Farmers' objections to David Frangiamore's declaration; and (2) sustained Sims' objections to the declaration of Gustavo Garcia that Gleason "signed" an application for landlord insurance in 2017.

*supra*, at p. 843.)  Generally, the court must grant the motion if the papers submitted show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (§ 437c, subd. (c).)

To meet its initial burden on summary judgment, a moving defendant generally must show, by admissible evidence, that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense thereto.  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859.)  Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense.  (*Id*. at pp. 859-860.)  In opposing the motion, the plaintiff may not simply rely upon the allegations or denials of the pleadings.  (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201.)  The plaintiff must set forth specific facts showing that a triable issue of material fact exists.  (*Ibid*.)  A genuine issue of material fact exists only if the evidence reasonably would permit a trier of fact, under the applicable standard of proof, to find the contested fact in favor of the party opposing the motion.  (*Catholic Healthcare West v. California Ins. Guarantee Assn.* (2009) 178 Cal.App.4th 15, 23.)

On appeal from a grant of summary judgment, we independently review the record, applying the same standard as the trial court to determine if there are genuine issues of material fact.  (*Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1024.)  "We are not bound by the trial court's stated reasoning or rationales." (*Ibid*.)  We view the evidence and the reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, resolving any doubts about the propriety of granting the motion in favor of the party opposing the motion.  (*Ibid*.)

II

*Foster's Motion for Summary Judgment*

Sims argues that the trial court erred in granting summary judgment on her claims against Foster.  We disagree.

A.       *Negligent Misrepresentation*

Negligent misrepresentation is a species of the tort of deceit.  (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407; Civ. Code, § 1710.)  To prove negligent misrepresentation, a plaintiff must show (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage.  (*Ragland v. U.S. Bank National Assn*. (2012) 209 Cal.App.4th 182, 196; *Shamsian v. Atlantic Richfield Co*. (2003) 107 Cal.App.4th 967, 983.)

Sims' negligent misrepresentation cause of action is based on alleged representations by Foster about the insurance coverage on the Andover property.  In particular, Sims alleges that she had two in-person conversations with Foster in 2013 and 2014.  During the first conversation, in late 2013 or early 2014, Sims claims that she told Foster that she was moving her personal belongings to the Andover house and wanted to know if they would be covered by her mother's insurance policy.  Sims claims that Foster told her they would be covered.  During the second conversation, in the Fall of 2014, Sims claims that she specifically asked Foster whether her business property would be covered, and Foster assured her that it would.  Sims claims that she relied on these "misrepresentations" to her detriment by failing to secure additional coverage for her personal and business property before it was destroyed in the Camp Fire.

In granting summary judgment, the trial court concluded that Sims cannot establish the elements of causation (justifiable reliance and resulting damage) because Foster's alleged misrepresentations pertain to coverage under the *prior* homeowners' insurance policy, which was replaced by the landlord policy more than a year before the Camp Fire.  We agree.

It is undisputed that at the time of Foster's alleged misrepresentations in 2013 and 2014, the policy of insurance in effect was Gleason's prior homeowners' insurance policy.

Thus, to the extent Foster made any representations about the scope of Gleason's insurance coverage, her representations were tied to that policy. Foster met her initial burden on summary judgment by showing Sims could not reasonably have relied on Foster's representations about the homeowners' insurance policy because Gleason subsequently replaced it with a different, landlord policy in August 2017.

In her attempt to create a triable issue, Sims disputes that Gleason authorized or knew about the policy change. She asserts that the handwritten note requesting the policy change is a forgery and that Gleason, because of her age and declining mental condition (i.e., the onset of dementia), would not have had the capacity to make such a change. And since Sims was not advised of the change, she contends it was reasonable for her to rely on Foster's prior representations about the scope of coverage.

We find Sims' evidence insufficient to create a triable issue of material fact. It is well established that a party cannot create a disputed issue of fact by a declaration that contradicts that party's prior deposition testimony or sworn discovery responses. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12; *Benavidez v. San Jose Police Dep't* (1999) 71 Cal.App.4th 853, 860.) This is because "admissions against interest have a very high credibility value." (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22.) Thus, "[w]here a declaration submitted in opposition to a motion for summary judgment clearly contradicts the declarant's earlier deposition testimony or discovery responses, the trial court may fairly disregard the declaration and ' "conclude there is no *substantial* evidence of the existence of a triable issue of fact." ' " (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087.)

In her deposition testimony and discovery responses, Sims admitted facts that directly contradict the statements in her declaration. In response to requests for admissions, Sims admitted that Gleason applied for the landlord insurance policy in August 2017, and that the signature on the relevant policy documents appeared to be her mother's. Likewise, when asked about the handwritten note requesting the policy

8

change,[4] Sims testified that, while it did not look like her mother wrote the body of the note, the signature and date appeared to be her mother's writing. These admissions contradict the statements in Sims' declaration that Gleason did not request the change to her policy or sign the relevant policy documents.

Sims' deposition testimony also contradicted her assertion that Gleason lacked the mental capacity to change the policy. At her deposition, Sims testified that when she moved to Magalia in 2013, her mother was "beginning to show signs of loss of certain faculties," but was "still able to handle her own affairs." She testified it was not until after the Camp Fire—when Gleason "went into complete dementia"—that she assumed control of her mother's affairs. In August 2017, when the insurance policy change occurred, Gleason was still making her own decisions.[5] Although her mother required "some help" at that time, Sims admitted she did not review her mother's bills and correspondence; did not accompany her mother when she met with her insurance agent; did not review any of the insurance documents sent to her mother; and never informed anyone at Farmers that her mother needed assistance making decisions. As a result, Sims was completely unaware that Gleason made the change to the landlord insurance policy in 2017.

Sims' admissions during discovery control over her contrary declarations in opposition to the summary judgment motions. (*Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613.) It follows that Sims' declaration is insufficient to create a triable issue of fact. The trial court correctly ruled that the cause of action for negligent

---

**4** The signed note, dated August 15, 2017, states: "I, Edna Gleason, no longer live in my home at [Andover Drive], in Magalia. Please rewrite my primary to Landlord policy."

**5** Sims' testimony is consistent with Farmer's "notes," which show that Gleason had numerous conversations with staff *the year before and the year after* the August 2017 policy change.

misrepresentation fails as a matter of law because Sims cannot prove causation. The alleged misrepresentations pertained to the scope of coverage under a different policy that was no longer in effect at the time of the loss.

B.    *Professional Negligence*

The elements of a cause of action for professional negligence are "(1) the existence of the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

In granting summary judgment, the trial court ruled that Sims could not establish Foster owed or breached a duty of care to Sims because the evidence showed Foster was neither Gleason's nor Sims' agent.

Sims contends that the trial court erred because she presented evidence showing that Foster was Gleason's agent. Sims contends that, as Gleason's agent, Foster had a continuing duty to advise on the adequacy of coverage, and she contends that this duty extended not only to Gleason, as the named insured, but also to Sims, as Gleason's daughter and tenant. Sims contends Foster breached that duty by terminating the homeowners' insurance policy and failing to advise Sims that her coverage was inadequate.

We conclude the trial court properly granted summary judgment on the negligence cause of action because even if there is a triable issue of fact as to whether Foster was Gleason's agent, Sims cannot establish that Foster owed or breached a duty of care *to Sims*.[6]

---

[6]    Although Sims argues in her briefs that Foster breached a duty to both Sims and Gleason, since the operative complaint alleges only a breach of duty to *Sims*, it is

10

"Ordinarily, an insurance agent 'assumes only those duties normally found in any agency relationship.  This includes the obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured.' " (*Wallman v. Suddock* (2011) 200 Cal.App.4th 1288, 1309; *Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1123.)  However, an insurance agent generally does not have a duty to investigate a customer's coverage needs, to procure coverage to meet those needs, or to point out the advantages of additional or different insurance coverage.  (*Wallman, supra*, at p. 1309; *Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 254 (*Vulk*); *San Diego Assemblers, Inc. v. Work Comp for Less Ins. Services, Inc.* (2013) 220 Cal.App.4th 1363, 1369-1370; *Ahern v. Dillenback* (1991) 1 Cal.App.4th 36, 40-43; *Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954, 956.)  Instead, " ' "the onus is . . . squarely on the insured to inform the agent of the insurance he [or she] requires." ' " (*Vulk, supra,* at p. 254; see *Travelers Property Casualty Co. of America v. Superior Court of Los Angeles County* (2013) 215 Cal.App.4th 561, 578 (*Travelers*).)

There are exceptions to the general rule limiting an insurance agent's duty of care.  (*Vulk, supra*, 69 Cal.App.5th at pp. 254-255.)  They apply when "(1) the agent misrepresents the nature, extent or scope of the coverage being offered or provided; (2) there is a request or inquiry by the insured for a particular type or extent of coverage; or (3) the agent assumes an additional duty by either express agreement or by holding themself out as having expertise in a given field of insurance being sought by the insured." (*Ibid*.; see *Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 923-927.)  In such circumstances, the agent may be found to have assumed a special duty of care toward the insured.  (*Vulk,* at p. 255; *Murray v. UPS Capital Ins. Agency, Inc.* (2020) 54 Cal.App.5th 628, 639-640.)

immaterial whether Foster breached a duty to Gleason, except insofar as it may relate to a duty owed to Sims.  (See *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 [the materiality of a disputed fact is measured by the pleadings].)

We do not find the evidence in this case sufficient to establish a triable issue of fact on a special duty of care. The only substantial evidence offered was that Foster answered Sims' questions about insurance coverage under Gleason's prior homeowners' insurance policy. There was no evidence that Foster made misrepresentations about coverage under the landlord insurance policy; that Foster was asked to obtain a certain type of coverage that was not obtained; or that Foster held herself out as an expert in a specialized area of insurance.

Moreover, to the extent Foster had a special duty of care, it was a duty owed to Gleason, not Sims. An insurance agent ordinarily owes no duty to anyone other than the client or customer. (*Travelers, supra*, 215 Cal.App.4th at pp. 578-580 [insurance broker owed a duty only to clients, not to a third party investor]; *The MEGA Life & Health Ins. Co. v. Superior Court of Riverside County* (2009) 172 Cal.App.4th 1522, 1530 [agent owed no duty to a spouse who was not the prospective purchaser of an insurance contract]; see also *Giacometti v. Aulla, LLC* (2010) 187 Cal.App.4th 1133, 1137 [general rule is that privity of contract is a requisite to professional negligence claim].) Sims was neither a client (see *Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.* (2012) 203 Cal.App.4th 1278, 1290 [defining client]), nor an insured. Accordingly, Foster had no duty to advise Sims on the adequacy of coverage or the availability of different or additional coverage.

That Sims' expert reached a contrary conclusion is not relevant. The issue of whether a duty of care exists is a question of law for the court. (*Fitzpatrick v. Hayes, supra*, 57 Cal.App.4th at pp. 920, 929; *Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1179-1180, 1184.)

### III

#### *Farmers' Motion for Summary Judgment*

Sims' claims against Farmers are premised on the doctrine of respondeat superior, i.e., that Farmers is the principal of Foster and therefore vicariously liable for the torts

allegedly committed by her.  (Civ. Code, § 2338.)  The trial court ruled that because the underlying claims against Foster failed as a matter of law, so too must the derivative claims against Farmers.  We agree.[7]

DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


_____\s\_____,
Krause, J.


We concur:


_____\s\_____,
Duarte, Acting P. J.


_____\s\_____,
Wiseman, J.*

---

[7]     Our disposition makes it unnecessary for us to consider Farmers' alternative argument that the judgment should be sustained because Foster was not acting as Farmers' agent when she allegedly engaged in the tortious conduct.

*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.